UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
FILED

MAR 3 1 2026

NATHAN OCHSNER
CLERK OF COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | CRIMINAL NO. 1:21-01011-004 |
| EVARISTO CRUZ-SANCHEZ | § § § | |

## PLEA AGREEMENT

The United States of America, by and through John G.E. Marck, Acting United States Attorney for the Southern District of Texas, and Lance Watt, Assistant United States Attorney, and the defendant, **EVARISTO CRUZ-SANCHEZ** ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to **Count Two** of the indictment and to persist with that plea of guilty through sentencing. **Count Two** charges Defendant with **Conspiracy to Import with Intent to Distribute more than more than fifty (50) grams or more of methamphetamine, five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a schedule II controlled substance; and four hundred (400) grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a scheduled II controlled substance, in violation of Title 21, United States Code, Sections 963, 959, and 960.** Defendant, by entering this plea, agrees that he/she is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment/information, or proved to a jury or proven beyond a reasonable doubt.

**Punishment Range**

2. The <u>statutory maximum</u> penalty for the violation of **Title 21, United States Code, Sections 963, 959, and 960** is **life imprisonment** and the <u>statutory minimum penalty</u> is **10 years imprisonment** and a fine of not more than $10,000,000.00.   Additionally, Defendant may receive a term of supervised release after imprisonment of at least five years up to life. Defendant acknowledges and understands that if he/she should violate the conditions of any period of supervised release which may be imposed as part of his/her sentence, then Defendant may be imprisoned for up to 5 years on Count One, without credit for time already served on the term of supervised release prior to such violation. Defendant understands that he/she cannot have the imposition or execution of the sentence suspended, nor is he/she eligible for parole.

**Mandatory Special Assessment**

3. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Immigration Consequences**

4. Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status. Defendant understands that if Defendant is not a citizen of the United States, by pleading guilty they may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if Defendant is a naturalized United States citizen, pleading guilty may result in immigration consequences,

such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that Defendant wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

### Cooperation [If Applicable]

5. Should the Defendant seek to provide substantial assistance to authorities, as contemplated by Section 5K1.1 of the United States Sentencing Guidelines, the Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas and the Chief of the Money Laundering, Narcotics and Forfeiture Section, Criminal Division. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. In seeking such a motion, the Defendant agrees to fully cooperate with the United States. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. The Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

    (a)    Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

    (b)    Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his/her Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c)    Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)    Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)    Defendant agrees to provide to the United States all documents in his/her possession or under his/her control relating to all areas of inquiry and investigation; and

(f)    Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he/she remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his/her plea.

### Waiver of Appeal, Collateral Review, and Statute of Limitations

7.    Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8.    Defendant also agrees that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-

barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

9.    In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that Defendant may have received from his/her counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10.    Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

11.    The United States agrees to each of the following:

(a)    If Defendant pleads guilty to the above-numbered count(s) of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing. The defendant agrees that with respect to any and all dismissed charges he/she is not a 'prevailing party within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law; and

(b)    If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

## Agreement Binding - Southern District of Texas Only

12.    The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

13.    The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)    to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)    to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)     to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e)     to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

14. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

15. Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a)     If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may

be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)     At a trial, the United States would be required to present witnesses and other evidence against Defendant.  Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them.  In turn, Defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf.  If the witnesses for Defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court; and

(c)     At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.  However, if Defendant desired to do so, he/she could testify on his/her own behalf.

## Factual Basis for Guilty Plea

16.   Defendant is pleading guilty because Defendant is in fact guilty of the charges contained in **Count Two** of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt: **[See attached Fact Summary Sheet]**

17. Defendant confesses and judicially admits that the factual summary accurately represents his involvement in the criminal activity to which he is pleading guilty.

## Breach of Plea Agreement

18.   If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant,

whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Monetary Penalties, Assets and Financial Disclosures

19. Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

20. Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

## Forfeiture

21. As part of this plea agreement, Defendant agrees to the following:

(a)    to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation.

(b)    to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property);

(c)    that Defendant obtained at least $1,000,000 from the criminal offenses, that the factual basis for the guilty plea supports the imposition of a money judgment in that amount, and that the Defendant agrees to the imposition of a money judgment in that amount;

(d)      that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, so that the forfeiture money judgment may be immediately satisfied via forfeiture of substitute property; and

(e)      to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

### Financial Statement

22.   Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

23. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

### Complete Agreement

24.   This written plea agreement, consisting of 12 pages, including the attached addendum of Defendant and his/her attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered

into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

25.   Any modification of this plea agreement must be in writing and signed by all parties.

_____
**EVARISTO CRUZ-SANCHEZ**
Defendant

APPROVED:

JOHN G.E. MARCK
ACTING UNITED STATES ATTORNEY

By: _____          _____
Lance Watt                                                   Attorney for Defendant
Assistant United States Attorney
Southern District of Texas

_____
Attorney for Defendant

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | CRIMINAL NO. 1:21-01011-004 |
| EVARISTO CRUZ-SANCHEZ | § | |
| | § | |
| | § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his/her rights with respect to the pending indictment/information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____     _____3-31-2026_____
Attorney for Defendant                                    Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment/information pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____     _____3-31-2026_____
Defendant                                                          Date

**PLEA PACKET MEMORANDUM**

ASSIGNED AUSA:  LANCE WATT

DEFENDANT:  **EVARISTO CRUZ-SANCHEZ**

CASE#  B-21-01011-004

RECOMMENDATION IN EXCHANGE FOR DEFENDANT'S PLEA TO **COUNT TWO and the WAIVER OF CERTAIN APPELLATE RIGHTS**: <u>**ACCEPTANCE OF RESPONSIBILITY (only if the defendant qualifies for an adjustment under section 3E1.1) AND DISMISSAL OF REMAINING COUNTS AT TIME OF SENTENCING.**</u>

<u>**FACT SUMMARY SHEET**</u>

Law enforcement authorities began an investigation into the illegal drug trafficking activities of the Cartel del Golfo (CDG) drug trafficking organization which is a violent transnational organization based in northeast Mexico involved in drug trafficking and other illicit activities. In addition, CDG employs violence to intimidate the public and control territory. The investigation uncovered that between approximately 2015 and 2021, CDG maintained control of much of the Mexico/United States border which included Brownsville, Texas and CDG was responsible for importing large quantities of methamphetamine, cocaine, and fentanyl from Mexico into the United States for distribution. At the time, the investigation identified Jose Alfredo CARDENAS-MARTINEZ aka El Contador, as the highest-ranking member of the organization, supported by Evaristo CRUZ-SANCHEZ aka Vaquero, the second highest-ranking member, Ricardo CORTEZ-MATEOS aka Billeton, and other leaders and organizers in Mexico and the United States, who were responsible for directing, managing, and overseeing CDG's drug trafficking.

As the organization's second highest-ranking member, CRUZ-SANCHEZ was responsible for the collection and preparation of hundreds of kilograms of methamphetamine, cocaine, and fentanyl in Mexico, and arranged to have the drugs smuggled into the United States by the organization's couriers, who smuggled the drugs using vehicles or on their persons. After coordinating the importation of methamphetamine, cocaine, and fentanyl into the United States, CDG oversaw the storage of the drugs in the Brownsville, Texas area, and the transportation of the drugs to other locations in the United States. CARDENAS-MARTINEZ, CRUZ-SANCHEZ, and other co-conspirators directed CDG members to coordinate the logistics of procuring methamphetamine, cocaine, and fentanyl in the organization's stash houses and the transportation of the drugs to the organization's distributors and customers throughout Texas, and elsewhere in the United States.

On January 22, 2019, based on information obtained during the investigation, law

1

enforcement began conducting surveillance on a residence previously identified as a drug storage location used by CDG in Brownsville, Texas. Law enforcement observed a black jeep Cherokee depart the residence and conducted a traffic stop. During a search of the vehicle, law enforcement discovered and seized multiple kilogram bundles concealed within the cabin of the vehicle and arrested the driver. Laboratory analysis confirmed the substance tested was methamphetamine and weighed 4.85 kilograms. During an interview with law enforcement, the driver stated that the drugs seized belonged to CDG and identified the CDG member who oversees all the methamphetamine and cocaine in Matamoros, Mexico.

On February 22, 2019, while conducting surveillance of a location previously identified as a drug storage location utilized by CDG, law enforcement observed a white truck arrive at the business. A short time later, the truck departed and began heading north on US-77. Law enforcement followed the truck until a traffic stop was conducted in Robstown, Texas. During the stop, law enforcement seized multiple kilogram bundles concealed within an oxygen tank stored in the rear of the vehicle. Laboratory analysis confirmed 6.9 kilograms contained methamphetamine and 9 kilograms contained cocaine. During a post-arrest interview, the driver admitted to law enforcement that he had personally picked up and delivered methamphetamine in Brownsville, Texas on behalf of CDG from individuals, whom the investigation revealed to be associates of CARDENAS-MARTINEZ and Cartel del Golfo.

On May 2, 2020, law enforcement arrested Cooperating Defendant One (CD1) after CD1 entered the United States from Mexico and voluntarily turned himself into law enforcement authorities. CD1 admitted to law enforcement that since approximately 2016, CD1 and CARDENAS-MARTINEZ arranged for the transportation of hundreds of kilograms of methamphetamine, cocaine, and fentanyl to Brownsville, Texas. CD1 stated CARDENAS-MARTINEZ aka El Contador is the highest-ranking member of Cartel del Golfo, who works in concert with the second highest-ranking member of the organization, CRUZ-SANCHEZ aka Vaquero. CD1 stated that CARDENAS-MARTINEZ and CRUZ-SANCHEZ work in concert with other Cartel del Golfo members to transport hundreds of kilograms of methamphetamine, cocaine, and fentanyl, which is collected from several of the CDG's members in Mexico, and prepared for transportation and distribution in the United States. CD1 admitted that CD1 attended a meeting with CARDENAS-MARTINEZ, CORTEZ-MATEOS, and other select co-conspirators of CDG, in which CARDENAS-MARTINEZ instructed that they all work together to take the methamphetamine, cocaine, and fentanyl to Brownsville, Texas, where CD1 would oversee its delivery on behalf of Cartel del Golfo. CD1 admitted CD1 employed individuals, to pick up, store, and deliver kilograms of methamphetamine, cocaine, and fentanyl.

CD1 admitted that during the time CD1 worked for CARDENAS-MARTINEZ and Cartel del Golfo, CD1 smuggled at least 10 kilograms of cocaine per month. During that time, CD1 employed multiple individuals to include Cooperating Defendant Two (CD2) and Cooperating Defendant Three (CD3) to smuggle drugs from Mexico into the United States. CD1 admitted that after receiving the cocaine, methamphetamine, and fentanyl in Matamoros, CD1 arranged various smugglers like CD3, and others, to smuggle the drugs

2

into the United States. CD1 admitted the drugs were loaded into commercial vehicles, personally owned vehicles, tractor-trailer trucks and driven to these locations for delivery to the organization's distributors and customers.

CD1 stated that CORTEZ-MATEOS is a close associate of CARDENAS-MARTINEZ and would carry out various tasks within the organization such as personally delivering verbal operational messages to other high-ranking members of Cartel del Golfo and handling the personal affairs of CARDENAS-MARTINEZ. CD1 stated that in approximately March 2019, CARDENAS-MARTINEZ was arrested in Mexico. CD1 stated that although CARDENAS-MARTINEZ was in custody, CARDENAS-MARTINEZ continued to operate as the head of Cartel del Golfo and continued to communicate through others in the organization, such as CORTEZ-MATEOS. CD1 stated that while CARDENAS-MARTINEZ was in custody, CARDENAS-MARTINEZ named CRUZ-SANCHEZ, as the acting leader of Cartel del Golfo (CDG). CD1 stated that CD1 frequently communicated with CRUZ-SANCHEZ to discuss the drug trafficking activities. CD1 admitted that CD1 met in-person with CARDENAS-MARTINEZ, CORTEZ-MATEOS, and other co-conspirators frequently regarding the organization's customers and distributors, the collection of payment for drug sales, and logistics regarding the transportation of the organization's drugs.

On May 2, 2020, law enforcement authorities arrested CD2 as he illegally entered the United States from Mexico. CD2 admitted that, in 2016, CD2 began working for CD1, and they both arranged for the transportation of hundreds of kilograms of methamphetamine, cocaine, and fentanyl from Mexico into Brownsville, Texas, under the direction of CARDENAS-MARTINEZ. CD2 stated that CRUZ-SANCHEZ and CORTEZ-MATEOS worked together with CD1 and CARDENAS-MARTINEZ. CD2 admitted to aiding CD1 with collecting methamphetamine, cocaine, and fentanyl from several CDG members in Mexico and preparing those drugs for transport into the United States.

On May 3, 2020, a voice mail message of a recorded call between CRUZ-SANCHEZ and a co-conspirator was left on CD1's WhatsApp account. On the message, CRUZ-SANCHEZ and the co-conspirator discussed having someone call CD1 and threaten to harm CD1 and his family if CD1 spoke with law enforcement authorities.

On March 27, 2021, law enforcement arrested CD3. During an interview, CD3 told law enforcement that, in January 2020, CD3 met with CD1 and another co-conspirator in Matamoros, Mexico, to discuss the three of them working together to transport drugs into the United States for distribution under the direction and approval of CDG leaders including CARDENAS-MARTINEZ, CRUZ-SANCHEZ, and others. CD3 admitted to law enforcement that CD3 had personally picked up, delivered, and coordinated the smuggling of cocaine, methamphetamine, and fentanyl on behalf of CD1, and other co-conspirators, who either are or were, in leadership positions of Cartel del Golfo. CD3 stated that given CD3's position in the organization, CD3 knew the following to be true regarding the CDG drug distribution operation; CARDENAS-MARTINEZ was the highest-ranking member of Cartel del Golfo, CRUZ-SANCHEZ was the second in command of the organization, the third-in-command was also the plaza boss for the city of Matamoros,

3

Mexico, CORTEZ-MATEOS holds a leadership position with the organization, CD2 was also responsible for coordinating drug shipments in concert with CD1, and that CD1 had since been replaced within the organization.

I agree the factual summary accurately represents my involvement in the crime to which I am pleading guilty and that the abbreviated proposed plea agreement accurately describes my plea agreement with the government. A complete written plea agreement may be attached.

**EVARISTO CRUZ-SANCHEZ**
Defendant

Counsel for Defendant

LANCE WATT
Assistant United States Attorney

Attorney for Defendant

4